Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4536 | **DATE** | 4/24/2002 |
| **CASE TITLE** | RICHARD PENDLETON vs. LASALLE NATIONAL BANK, N.A. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is granted.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 26 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 182 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT,
# NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD PENDLETON and<br>MARCIA DOERING, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | Case No. 98 C 4536 |
| v. | )<br>) | The Honorable John W. Darrah |
| LASALLE NATIONAL BANK, N.A., | )<br>) | |
| Defendant. | )<br>) | |

DOCKETED
APR 26 2002

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Richard Pendleton ("Richard") and Marcia Doering ("Marcia") (collectively "Plaintiffs"), filed an amended complaint[1] against Defendant, LaSalle National Bank ("Defendant"), alleging negligence (Count I) and breach of fiduciary duty (Count II).[2] Defendant, pursuant to Federal Rule of Civil Procedure 56, moves for summary judgment on Counts I and II.

For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes

---

[1] Brian Pendleton, Plaintiffs' brother, was formerly a defendant in this action but was dismissed pursuant to a default judgment in favor of Plaintiffs.

[2] Defendant was granted summary judgment by Judge Zagel on a third count for conversion on June 21, 2000.

-1-

of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1")[3] and exhibits are as follows.

---

[3]The Court will not consider unsupported statements of fact or general "denials" that do not contain references to the factual record, as required by Local Rule 56.1(3). *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (noting that the Seventh Circuit repeatedly upheld strict compliance with the local rules governing summary judgment given the importance of local rules that structure the summary judgment process). All 56.1

-2-

Richard is a citizen of Nevada. (Pl.'s 56.1 ¶ 1.) Marcia was, at all material times, a citizen of Ohio and now resides in North Carolina. (Def.'s 56.1 ¶ 2.) Defendant is a national banking association, having its principal offices in Illinois. (Def.'s 56.1 ¶ 3.)

Esther Pendleton ("Mrs. Pendleton") was the mother of Plaintiffs and their brother, Brian Pendleton ("Brian"). (Def.'s 56.1 ¶ 6.) For less than a year before her death, Defendant was the guardian of Mrs. Pendleton's disabled estate. (Def.'s 56.1 ¶ 7.) Defendant was also the trustee of a "pour-over" trust Mrs. Pendleton created under a trust instrument dated September 4, 1986. (Def.'s 56.1 ¶ 7.)

On August 27, 1987, Mrs. Pendleton died; and in September 1987, her probate estate was opened in the Probate Division of the Circuit Court of Cook County. (Def.'s 56.1 ¶¶ 6, 8.) Brian and Philip J. Stover ("Stover") were appointed co-administrators of Mrs. Pendleton's estate under the supervision of Judge Henry Budzinski, then-Presiding Judge of the Probate Division. (Def.'s 56.1 ¶ 9; Am. Compl. ¶ 12.) On November 7, 1991, Brian and Stover were removed as co-administrator of Mrs. Pendleton's estate, and Defendant was appointed administrator under the supervision of Judge Budzinski. (Def.'s 56.1 ¶ 10; Am. Compl. ¶ 20.)

Plaintiffs allege that, while Brian was the co-administrator of their mother's estate, he abused his position by misusing the estate's assets for his own purposes and making false reports to the probate court regarding those assets. (Def.'s 56.1 ¶ 11.) Plaintiffs allege that Brian (1) lived in Mrs. Pendleton's house rent-free from the time of her death until April 1993, (2) engaged in a lengthy "rehabilitation" project that destroyed the home's interior and substantially delayed sale of the property, and (3) transferred two of Mrs. Pendleton's limited partnership interests to himself and

responses which fall into this category are deemed admitted.

-3-

falsely claimed that these interests were valid gifts to him. (Def.'s 56.1 ¶ 12.) Plaintiffs also allege that after Brian was removed as administrator, he filed frivolous and dilatory motions, pleadings, and appeals in order to delay the closing of the estate and distribution of the remaining assets of the trust and to consume the assets of the estate with litigation costs and attorney's fees. (Def.'s 56.1 ¶ 13.)

Plaintiffs also allege that Defendant, as guardian of Mrs. Pendleton's disabled estate, trustee, or administrator of Mrs. Pendleton's estate, had a duty to Plaintiffs to prevent Brian's conduct. (Def.'s 56.1 ¶ 14.) Plaintiffs allege Defendant failed to fulfill that duty by (1) failing to recover the limited partnership interests from Brian; (2) failing to prevent Brian from living in Mrs. Pendleton's home rent-free, placing a mortgage on the home, and damaging it through a "rehabilitation" project; (3) failing to prevent Brian from filing frivolous motions and appeals in probate court; and (4) investing the estate's cash assets in money market funds that LaSalle owned and managed instead of in other investments that may have earned more. (Def.'s 56.1 ¶ 14.)

On July 30, 1988, Richard wrote a letter to Cheryl Schwartz, a trust administrator employed by Defendant. (Def.'s 56.1 ¶ 15.) In this letter, Richard stated:

> I write to you to express my dissatisfaction with the way you are fulfilling your fiduciary duties to the Estate of Esther Pendleton, both as guardian of the estate of the disabled person and as trustor of the irrevocable trust. It is my belief that you have failed to exercise due diligence in safeguarding the assets of the estate and in pursuing income due the estate. For example, since your appointment as Guardian of the estate of Esther Pendleton, Brian Pendleton has been allowed to live in the home, rent free.
>
> ***
>
> Another example of what I perceive to be misfeasance by the bank involves its failure to collect and control all the securities belonging to the estate. Specifically in question are two limited partnership interests owned by my mother which have subsequently been transferred to the name of Brian Pendleton and for which no payment was made to the estate.

(Def.'s 56.1 ¶ 15.) Richard sent another letter to Ms. Schwartz dated September 20, 1988, on behalf

of himself and his sister, Marcia. (Def.'s 56.1 ¶¶ 16, 28.) In this letter, Richard asked Ms. Schwartz what Defendant had done to (1) collect rent from Brian for the past year-and-a-half, (2) safeguard Mrs. Pendleton's home from the waste and damage from the elements, (3) put the house on the market for sale, and (4) recover assets belonging to Mrs. Pendleton's estate that "were apparently converted by" Brian. (Def.'s 56.1 ¶ 16.)

Ms. Schwartz responded to this letter on September 30, 1988, by pointing out that Defendant had been discharged as guardian of the disabled estate of Mrs. Pendleton and that its role was limited to serving as the trustee of a trust holding $56,000 in assets. (Def.'s 56.1 ¶ 17.) She suggested that Richard direct his concerns to the co-administrators of Mrs. Pendleton's estate, Brian and Stover. (Def.'s 56.1 ¶ 17.)

By the time Richard wrote the letters of July 30 and September 20, 1988 to Ms. Schwartz, an employee of Defendant, and, in fact, as early as 1987, he was aware that Brian was living in the house rent-free and believed that Defendant was breaching its fiduciary duties to the estate by failing to collect rent from Brian. (Def.'s 56.1 ¶ 18.) As of July 1988, Richard was aware that Brian claimed ownership of their mother's limited partnership interests. (Def.'s 56.1 ¶ 19.) As early as July 1988, Richard believed that Defendant had been negligent and breached its fiduciary duties by failing to collect and control those limited partnership interests and that damage was occurring due to Defendant's inaction. (Def.'s 56.1 ¶ 19.) As of September 1988, Richard believed that Defendant had breached its duties to him by failing to safeguard Mrs. Pendleton's home generally. (Def.'s 56.1 ¶ 20.) Richard was aware of a mortgage being placed on the property in 1988. (Def.'s 56.1 ¶ 21.) He had discussions with Defendant about the mortgage at that time and believed that Defendant had failed to properly act by not opposing the mortgage. (Def.'s 56.1 ¶ 21.)

On April 15, 1991, Richard wrote a letter to Judge Budzinski, complaining of Brian's administration of the estate and Judge Budzinski's supervision of the estate. (Def.'s 56.1 ¶ 22.) In the letter to Judge Budzinski, Richard mentioned that Brian had failed to sell the house, had performed unauthorized demolition on the property, had failed to hire a competent general contractor to rehabilitate the property, and had allowed the house to fall into disrepair. (Def.'s 56.1 ¶ 22.)

In a letter to William Vonder Heide, an employee of Defendant, dated January 16, 1992, shortly after Defendant's appointment as administrator of the estate on November 7, 1991, Richard discussed the need to repair the property and stated, "I wonder if the residence is legally considered fit for human habitation and if not, why is he not being asked to move out?" (Def.'s 56.1 ¶ 23.) Richard wrote this letter on behalf of himself and his sister Marcia. (Def.'s 56.1 ¶ 28.)

Marcia agreed with the views expressed in Richard's letters to Ms. Schwartz. (Def.'s 56.1 ¶ 29.) Marcia believed in 1987 that rent needed to be collected from Brian. (Def.'s 56.1 ¶ 30.) As of February 1988, Marcia believed that Defendant was breaching its fiduciary duties in failing to safeguard her mother's home and that she was being damaged by Defendant's breach. (Def.'s 56.1 ¶ 31.) As of July 1988, she was "dissatisfied" with the way Defendant was fulfilling its fiduciary duties with respect to the collection of rent and believed that Defendant was negligent in fulfilling its duties by failing to collect the limited partnership interests from Brian. (Def.'s 56.1 ¶¶ 30, 32.)

Plaintiffs also addressed the issues of obtaining rent, recovering the limited partnership interests, and obtaining damages from Brian with their other attorney in the probate case, Morton Barnard, who counseled them not to pursue these issues. (Def.'s 56.1 ¶ 26.)

Following his removal as administrator of Mrs. Pendleton's estate, Brian filed the following pleadings: (1) a motion to reconsider portions of the November 11, 1991 order, which was denied

on January 27, 1992; (2) a motion to reconsider the order entered on January 27, 1992, which was denied on February 3, 1992; (3) a notice of appeal on February 26, 1992; (4) a petition to stay sale of realty on April 22, 1992; (5) a motion to remove Defendant as the administrator and reappoint himself as administrator on May 15, 1992; (6) a petition for change of venue requesting recusal for cause on June 11, 1992; (7) a third motion to reconsider, which was denied on July 16, 1992; (8) a petition for citation to recover property in the form of damages and to appoint special administrator; (9) a fourth motion to reconsider, which was denied on August 11, 1992. (Def.'s 56.1 ¶ 33.) Additionally, on November 5, 1992, on Defendant's motion, Brian was held in contempt of court for violating an order requiring him to relinquish the keys to the house to a court-appointed auctioneer and allow the auctioneer to inspect the property. (Def.'s 56.1 ¶ 34.)

Brian was subsequently evicted from the house by Order dated December 3, 1992, and the property was sold in May 1993. (Def.'s 56.1 ¶ 35.) The time period in which Plaintiffs claim that Defendant breached its duty to prevent Brian's obstreperous litigation conduct began at the time Brian was removed as administrator in November 1991. (Def.'s 56.1 ¶ 36.)

From the time that Defendant became administrator of the estate in 1991, it invested the estate's cash assets in an interest-bearing money market account it managed. (Def.'s 56.1 ¶ 38.)

On July 23, 1998, Plaintiffs filed a three-count complaint against Defendant and Brian. (Def.'s 56.1 ¶ 39.) On January 20, 1999, the Honorable Judge James B. Zagel granted Plaintiffs' oral motion for entry of default against Brian. On September 23, 1999, Judge Zagel entered a default judgment against Brian on Count II of the complaint in the amount of $491,377.20. (Def.'s 56.1 ¶ 40.) Brian has appealed from this judgment. (Def.'s 56.1 ¶ 40.) This appeal is currently being briefed. (Def.'s 56.1 ¶ 40.)

On February 29, 2000, Plaintiffs filed an amended complaint, restating their claims against Defendant for negligence (Count I) and breach of fiduciary duty (Count II) and adding a claim for conversion (Count III). (Def.'s 56.1 ¶ 41.) On June 21, 2000, Judge Zagel entered summary judgment in favor of Defendant on Plaintiffs' conversion claim. (Def.'s 56.1 ¶ 42.)

## DISCUSSION

Defendant argues that summary judgment is appropriate because Plaintiffs' claims are barred by the statute of limitations.

Essentially, Plaintiffs claim that Defendant breached its fiduciary duty by (1) failing to recover the limited partnership interests from Brian; (2) failing to prevent Brian from living in Mrs. Pendleton's home rent-free, placing a mortgage on the home, and damaging it through a "rehabilitation" project; (3) failing to prevent Brian from filing frivolous motions and appeals in probate court; and (4) self-dealing by investing the estate's cash assets in money market funds that LaSalle owned and managed instead of in other investments that may have earned more.

Illinois law provides that:

> actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or person, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

735 Ill. Comp. Stat. 5/13-205 (2002).

Plaintiffs argue that a ten-year statute of limitations applies to their breach of fiduciary duty claims because the fiduciary duty arises from a written contract, the trust agreement. *See* 735 Ill. Comp. Stat. 5/13-206 (2002) (ten-year statute of limitations for claims for breaches of duties established by written instruments). However, "[a] fiduciary duty . . . is an extracontractual, legal

duty which often arises even in the absence of a contract." *Armstrong v. Guigler*, 174 Ill. 2d 281, 295 (1996). The five-year statute of limitations provided for in section 5/13-205 applies to actions for breach of fiduciary duty, "regardless of the fact that . . . the fiducial relationship arose from a written contract." *Armstrong*, 174 Ill. 2d at 294; *see also Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1337 (7th Cir. 1992) ("A breach of fiduciary duty claim is an action 'not otherwise provided for' in the Illinois statute of limitations."). Therefore, the five-year statute of limitations provided for in section 5/13-205 governs Plaintiffs' claims for breach of fiduciary duty.

Under Illinois law, a cause of action accrues "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981). "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College*, 88 Ill. 2d at 416. When the running of the statute of limitations begins is a question of fact. *Knox College*, 88 Ill. 2d at 416. However, "[w]here it is apparent from the undisputed facts . . . that only one conclusion can be drawn, the question becomes one for the court." *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981).

Plaintiffs' claims that Defendant failed (1) to collect rent from Brian for his occupancy of Mrs. Pendleton's home, (2) to recover the limited partnership interests from Brian, and (3) to prevent Brian's damage to the house and his dilatory litigation tactics are barred by the five-year statute of limitations. As early as 1987, Plaintiffs knew of their injuries and should have known that they were wrongfully caused. *See Knox College*, 88 Ill. 2d at 415. Plaintiffs testified that they knew of Brian's misconduct and believed that Defendant breached its fiduciary duty as early as 1987. (R. Pendleton Dep. at 44-46, 50-51; M. Doering Dep. at 34, 46-47, 52.)

Plaintiffs knew that Brian was living in their mother's home rent-free in 1987. Plaintiffs also knew that Brian had misappropriated two partnership interests in 1988. Richard raised his concern that Brian was living in their mother's home rent-free and had misappropriated those limited partnership interests as early as 1988 in a letter to Cheryl Schwartz. Richard also wrote another letter to Ms. Schwartz in 1988 in which he inquired what was being done to (1) collect rent from Brian, (2) safeguard his mother's home from waste and damage, (3) sell the home, and (4) recover assets belonging to his mother that Brian had misappropriated. Also in 1988, Richard believed that Defendant had breached its duties by failing to safeguard the home.

Richard continued to raise his concerns that the house (1) was not being put up for sale, (2) was allowed to fall into disrepair, and (3) was being damaged by the "rehabilitation" in letters to Judge Budzinski in 1991. In 1992, Richard wrote to Vonder Heide, an employee of Defendant, regarding the condition of the house. Plaintiffs raised these concerns with Morton Barnard, an attorney who was representing them in the probate matter and who counseled them not to pursue rent, damages to the house, or recovery of the limited partnership interests from Brian.

It is apparent from the undisputed facts that Plaintiffs were aware of their brother's misconduct and Defendant's lack of action with regard to Brian's misconduct in as early as 1987, eleven years before they filed the instant action against Defendant. Moreover, even if Plaintiffs did not become aware of Brian's misconduct and Defendant's duty to prevent it until 1991, as they contend in their brief in opposition (Pls.' Mem. Opp'n Def.'s Mot. Summ. J. at 3), that awareness of misfeasance occurred at least seven years before Plaintiffs filed the instant action against Defendant. Therefore, Plaintiffs' claims that Defendant breached its fiduciary duty by failing to collect rent from Brian for his occupancy of Mrs. Pendleton's home, to recover the limited

partnership interests from Brian, and to prevent Brian's damage to the house and his dilatory litigation tactics are barred by the five-year statute of limitations.

Plaintiffs next argue that their cause of action only accrued once the statute of limitations for an action by Defendant against Brian expired. This argument confuses the issues of Brian's misconduct and Defendant's breach of fiduciary duty. In 1987, Defendant, as trustee of Mrs. Pendleton's estate, owed a fiduciary duty to Plaintiffs which would be breached by inaction with any known misconduct by Brian. Plaintiffs, as beneficiaries, always had the right to enforce the trust agreement against Defendant if Defendant was breaching its fiduciary duties by permitting Brian to damage the res, or otherwise. Plaintiffs cite no applicable authority that they would be required to wait until when, and if, Defendant brought an action against Brian to assert Plaintiffs' claims against Defendant. Rather, Plaintiffs' analogies to accrual of actions for legal malpractice are inapposite. In the case of an action for legal malpractice, there is no malpractice until, for example, the attorney fails to file the suit during the allowed time. *See Brite Lights, Inc. v. Gooch*, 305 Ill. App. 3d 322, (1999) (holding claim for legal malpractice for failure to re-file complaint that was dismissed for want of prosecution did not accrue until time for re-filing had expired because, until the re-filing period expired, plaintiff had suffered no damage). However, in an action for breach of fiduciary duty, there is a breach, and a beneficiary is damaged, as soon as the trustee fails to carry out his duties.

As set out above, Plaintiffs were represented by counsel in the probate matter. Brian filed nine motions during a period beginning November 11, 1991 and ending August 11, 1992. Thus, Plaintiffs and their counsel were aware of Brian's pattern of filing frivolous pleadings and motions when he was filing them in 1991 and 1992, more than five years before they filed the instant action against Defendant. Therefore, this claim is also barred by the statute of limitations.

Finally, Plaintiffs' claim that Defendant negligently invested the assets of Mrs. Pendleton's estate into a money market account that was managed by Defendant is also barred by the statute of limitations. The evidence presented indicates that Defendant invested the assets of Mrs. Pendleton's estate in that money market account since November 1991, when it was appointed administrator of the estate. Plaintiffs have known since that time that Defendant was so investing in that money market account, yet did not bring the instant action for negligence against Defendant until 1998. Therefore, Plaintiffs' claim for negligence is barred by the five-year statute of limitations.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: April 24, 2002

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

| | |
|---|---|
| RICHARD PENDLETON | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 98 C 4536 |
| LASALLE NATIONAL BANK | |

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted.

Michael W. Dobbins, Clerk of Court

Date: 4/24/2002

*Linda Garth*

Linda Garth, Deputy Clerk